IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>MELVIN THOMAS,</td><td>*</td><td></td></tr>
<tr><td>    Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Civil No. 23-cv-3379-BAH</td></tr>
<tr><td>BALTIMORE POLICE DEPARTMENT, <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td>    Defendants.</td><td>*</td><td></td></tr>
</table>

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Melvin Thomas ("Thomas" or "Plaintiff") brought suit against Detective George Vigue ("Vigue"), Detective Danielczyk ("Danielczyk"), Detective Copeland ("Copeland") (collectively "Officer Defendants") and the Baltimore Police Department ("BPD") alleging malicious prosecution (count I), fabrication of evidence (count II), failure to investigate and disclose exculpatory and impeachment evidence (count III), failure to intervene (count IV), malicious prosecution (count V), intentional infliction of emotional distress (count VI), and indemnification (count VII).[1]  ECF 1 (complaint).  Pending before the Court are Officer Defendants' motion to dismiss for failure to state a claim, ECF 20, and BPD's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  ECF 21.  Thomas filed an opposition to both motions, ECF 28 (response to BPD motion), ECF 29 (response to Officer Defendants' motion), and Defendants filed replies, ECF 33 (Officer Defendants' reply), ECF 36 (BPD reply).[2]  All filings

---

[1] Counts I-VI are asserted against the Officer Defendants. Count VII is asserted against the BPD.

[2] Plaintiff also filed a motion for leave to file a surreply to BPD's reply in response to BPD allegedly raising new arguments. ECF 37, at 2. The practice of filing a surreply is "highly disfavored in this District," but the Court has the discretion to grant leave for such a filing in

include memoranda of law and exhibits.[3] The Court has reviewed all relevant filings and finds

that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated

below, Officer Defendants' motion, ECF 20, is **GRANTED** in part and **DENIED** in part. The

failure to intervene claim is dismissed without prejudice. All other claims against the Officer

Defendants survive dismissal. BPD's motion to dismiss for lack of subject matter jurisdiction,

ECF 21, is **GRANTED**. Plaintiff's claim against BPD for indemnification is dismissed without

prejudice.

## I.    BACKGROUND

This case arises out of the arrest, prosecution, and conviction of Plaintiff for attempted first

degree murder and robbery. ECF 1, at 14. The following facts from the complaint are accepted

as true, and all reasonable inferences are drawn in Plaintiff's favor. *See, e.g., E.I. du Pont de*

*Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

On February 26, 2001, Myron Brockington ("Brockington") was outside of a bar called

"Ms. Sally's Place" on North Glover Street in Baltimore using his cell phone. ECF 1, at 2 ¶ 2.

Two individuals confronted Brockington with a gun. *Id.* ¶ 3. One of the individuals shot

Brockington. *Id.* at 8 ¶ 35. Brockington survived the shooting and fled. *Id.* ¶ 36.

---

appropriate circumstances. *Suchin v. Fresenius Med. Care Holdings*, 715 F. Supp. 3d 703, 710
(D. Md. 2024). One such circumstance is when a party in its reply brief raises for the first time a
matter that its opponent would otherwise be unable to contest. *Medish v. Johns Hopkins Health*
*Sys. Corp.*, 272 F. Supp. 3d 719, 722 (D. Md. 2017). The Court is not fully convinced that BPD
raised a new argument in its reply brief. However, to the extent there was a discrepancy between
BPD's initial motion and reply brief regarding the basis on which BPD asks the Court to grant
dismissal of the indemnification claim, Plaintiff should be afforded an opportunity to respond. As
such, the Court will **GRANT** Plaintiff's motion for leave to file a surreply. ECF 37. As such, the
Court considered ECF 37-1 in rendering this decision.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-
generated page numbers at the top of the page.

Several BPD officers responded to the scene and started an investigation of the shooting. *Id.* ¶ 39. According to Plaintiff, Detective Vigue, Detective Danielczyk, and Detective Copeland (the "BPD employees" or the "Officer Defendants"[4]) were involved in the investigation. *Id.* ¶ 40. Vigue was the lead investigator and Danielczyk and Copeland were members of the investigative team. *Id.* at 11 ¶ 64.

One day later, Brockington identified Donte Lyle as one of the two individuals he saw just before he was shot. *Id.* at 9 ¶ 41. Brockington also stated that he believed Lyle handed the gun to the shooter immediately before the shooting. *Id.* ¶ 42. Nina Wilson, an employee of the bar, did not witness the shooting, but noticed a person she had not seen before prior to the shooting. *Id.* ¶ 43. She described the person as a "Black Male, 22-23 years old, with dark skin, 'Asian' shaped eyes, round face, flat/wide nose, close cut hair 5'9" to 5'11," medium build." *Id.* Brockington informed the police that he did know the other person Lyle was with, but that the other person with Lyle was the person who shot him. *Id.* ¶ 44. After Lyle was arrested, Lyle gave a statement to the police describing the shooter as a "Black Male, approximately 22 years old, close-cut hair, thick build, and short, dark skinned." *Id.* ¶ 46. Thomas is not short or dark-skinned. *Id.* ¶ 47.

On April 3, 2001, Officer Defendants showed photographs to Wilson, including Thomas's photograph. *Id.* ¶ 50. Wilson did not pick Thomas's photograph or any photograph as a person involved in the shooting or even present that night at the bar. *Id.* at 9–10 ¶ 51. In response, the Officer Defendants told Wilson that "she needed to pick a picture anyway." *Id.* at 10 ¶ 52. Wilson refused to pick a picture, and "told BPD employees why she knew the picture of [] Thomas was

---

[4] The Plaintiff uses "BPD employees" and "Officer Defendants" interchangeably to refer to Vigue, Danielczyk, and Copeland. The Court will use Officer Defendants for the sake of consistency, but the Court notes that the term "BPD employees" is sometimes used when directly quoting the complaint.

not the person she saw, and she explained why his picture was wrong." *Id.* ¶¶ 53, 54. Similarly, Officer Defendants showed Brockington photospreads that included Thomas's photograph, but Brockington did not select Thomas's photograph. *Id.* ¶ 55.

Thomas alleges that "in response," the Officer Defendants presented other photospreads with Thomas's photograph in them. *Id.* ¶ 56. During the presentation of subsequent photospreads, the Officer Defendants allegedly became aggressive with Brockington, banging their fingers on the table, while "pointing at the picture of [] Thomas and insisting [] Brockington pick a photograph falsely identifying [] Thomas as being his shooter." *Id.* Brockington "refused to pick the pictures of [] Thomas that [the Officer Defendants] identified and pointed at, or any other photograph [in the photospread] on more than one occasion." *Id.* ¶ 57.

Thomas alleges that the Officer Defendants did not report to the State's Attorney's Office for Baltimore City ("SAO") that Brockington repeatedly failed to identify Thomas as the shooter and instead "continued to try to get an identification of [] Thomas out of [] Brockington." *Id.* ¶ 58. The Officer Defendants "would meet [] Brockington by showing up at his house, or by picking [him] up and taking him to the police station and putting him in a room." *Id.* at 10–11 ¶ 59. In these subsequent encounters, the Officer Defendants again showed Brockington photographs, including photographs of Thomas, and insisted that Brockington pick Thomas's photograph. *Id.* at 11 ¶ 60. Brockington feared that the police were "going to continue to harass him or his family and violate his rights." *Id.* ¶ 61. According to Plaintiff, the Officer Defendants "told [] Brockington they finished their investigation, they knew [] Thomas was the man that shot him, and that they just needed [] Brockington to sign his name next to the photograph." *Id.* Brockington eventually signed "on the picture of [] Thomas." *Id.* ¶ 62.

After obtaining Brockington's signature, the Officer Defendants went back to Wilson to "get [her] to also make an identification of [] Thomas." *Id.* Wilson refused to make any identification from the photospread and told the Officer Defendants "why [] Thomas's picture was not the person who shot [] Brockington." *Id.* The Officer Defendants then allegedly decided not to take a recorded statement from Wilson. *Id.* ¶ 63.

Plaintiff further alleges that the Officer Defendants "selectively summarized their progress in investigative notes and reports," *id.* at 11–12 ¶ 65, "failed to memorialize meetings with [] Brockington when [] Brockington was presented with photospreads containing [] Thomas's photograph and [] Brockington did not select Thomas's photograph" *id.* at 12 ¶ 66, and "did not disclose these events to the prosecution or the defense because they contradicted the Officer Defendants' narrative of the case." *Id.* Plaintiff also asserts that "Vigue, Copeland and Danielczyk told [] Brockington that [] Thomas had shot him, and they fed him details implicating [] Thomas in order to convince him to sign his name to say that [] Thomas did shoot him." *Id.* ¶ 69. The Officer Defendants "did not take notes of, or videotape or audio record, other prior meetings with [] Brockington when he refused to follow their direction to select [] Thomas's photograph in order to cover up their misconduct." *Id.* at 13 ¶ 72. Further, in the application and supporting affidavit for the arrest warrant, the Officer Defendants did not disclose the prior negative identifications and witness statements or that Brockington had told them that the picture of Thomas was not the person who shot him. *Id.* at 14 ¶ 77.

At trial, the prosecution relied on the allegedly "coerced and/or fabricated identification and witness testimony of [] Brockington." *Id.* ¶ 81. On December 6, 2001, the jury convicted Thomas of, *inter alia*, attempted first-degree murder and robbery. *Id.* ¶ 82. The court sentenced Thomas to 65 years in prison. *Id.* at 15 ¶ 85. Thomas maintained his innocence and repeatedly

challenged his convictions for almost two decades. *Id.* ¶ 88. Thomas eventually received documents in response to a public records request and discovered police reports that had not been disclosed to the defense before trial. *Id.* ¶ 90.

The State eventually joined in Thomas's Petition for a Writ of Actual Innocence. *Id.* at 16 ¶ 92. On December 15, 2020, the Circuit Court for Baltimore City held a hearing, granted the petition, and vacated Thomas's convictions. *Id.* ¶ 93. The State then dismissed each count against Thomas. *Id.* ¶ 94. On that same day, Thomas was exonerated, his case was terminated, and he was released from prison. *Id.* ¶ 95.

Plaintiff asserts that he suffered "immense physical and emotional pain" throughout his 19 years of imprisonment. *Id.* ¶¶ 98, 99. Thomas "witnessed murders in prison, [] witnessed inmates killing other inmates, and [] was attacked and stabbed with a knife while he slept, sustaining a serious cut across his face that is still visible on [his] face to this day." *Id.* ¶ 101.

Plaintiff contends that the Officer Defendants engaged in misconduct and actively pursued his wrongful conviction. *Id.* at 6 ¶ 22. As a result, Plaintiff seeks compensatory damages, punitive damages, and attorney's fees based on seven claims for relief. *Id.* at 22–23. Count I asserts a claim for malicious prosecution against the Officer Defendants under § 1983. *Id.* at 17. Count II asserts a claim for fabrication of evidence against the Officer Defendants in violation of § 1983. *Id.* at 18. Count III asserts a failure to investigate and disclose exculpatory and impeachment evidence claim against the Officer Defendants under § 1983. *Id.* at 19. Count IV asserts a failure to intervene claim against the Officer Defendants, also under § 1983. *Id.* at 20. Counts V and VI assert state law claims against the Officer Defendants for malicious prosecution and intentional infliction of emotional distress. *Id.* at 20–21. Finally, Count VII seeks to compel the BPD to indemnify the Officer Defendants upon a finding of their liability to Plaintiff. *Id.* at 22.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to "state a claim upon which relief can be granted." Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

In considering a motion under Rule 12(b)(6), courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.,* 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.,* 767 F.3d 379, 396 (4th Cir. 2014).

7

**B.**     **Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008). As relevant here, "[w]hether a claim is ripe is a question of subject matter jurisdiction." *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 92 (D. Md. 2021) (citation and quotation marks omitted).

**C.**     **Section 1983**

In Counts I through IV of the complaint, Plaintiff alleges violations of both the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983. Under Section 1983, a plaintiff may file suit against any person, who acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that: (1) a right conferred by the Constitution or the laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**III.     ANALYSIS**

I.     Claims Against Officer Defendants

In support of their Motion to Dismiss, the Officer Defendants assert that Plaintiff's complaint contains "conclusory allegations, improper group pleading, and contradictory allegations" that fail to meet the federal pleading standard. ECF 20-1, at 2. The Officer Defendants

also lodge specific objections to each of the six counts brought against them. The Court will address each argument for dismissal in turn.

### A.   Group Pleading

As an initial matter, Officer Defendants argue that Plaintiff engages in improper group pleading by "inappropriately rel[ying] upon conclusory and vague phrases such as 'Officer Defendants' and 'BPD employees' to connect his allegations to the named Officers," and that the complaint is "devoid of any specific allegations as to what each officer is alleged to have done, or not done, and how each of them were involved in the Complaint's allegations." *Id.* at 5. As a result, Officer Defendants allege that Plaintiff "has failed to put the named officers on proper notice of the claims being brought against them." *Id.* at 7 (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Plaintiff responds that the complaint "clearly states that Vigue, Copeland, and Danielczyk are collectively the 'Officer Defendants,'" and that Plaintiff "makes specific allegations against the three individual officers by identifying their specific involvement and misconduct." ECF 29, at 14, 15. Plaintiff also maintains that "[e]ach allegation provides the Officer Defendants ample notice of the misconduct and constitutional violations they are accused of committing and Plaintiff is now entitled to 'an opportunity to develop evidence before the merits are resolved.'" ECF 29, at 15 (citations omitted).

It is well-established that where "use of [a] collective noun is not an effort to name 'everyone that could have been involved,' but rather a calculated decision to accuse all named parties," the use of such a term does not amount to insufficient group pleading under *Iqbal* and *Twombly*. *See Burgess v. Balt. Police Dep't ("Burgess I")*, Civ. No. RDB-15-0834, 2016 WL 795975, at *10 (D. Md. Mar. 1, 2016) (citation omitted); *see also Sprint v. Nextel Corp. v. Simple Cell, Inc.*, Civ. No. CCB-13-617, 2013 WL 3776933, at *2 (D. Md. July 17, 2013) (holding with

respect to group pleading that "where the defendants are all alleged to have participated in a scheme involving the same conduct [] it is appropriate to group the defendants together" so long as "it is plausible that each defendant was involved in all of the facts as alleged"). More specifically, in *Burgess I*, Judge Bennett found that the plaintiff's "use of 'Officer Defendants' is hardly an attempt to shift the burden from Plaintiff to the Officer Defendants regarding what they did or did not do." *Burgess*, 2016 WL 795975, at *10. Rather, the court found that "the burden remains firmly on the shoulders of [plaintiff] to plead a plausible claim for relief, and then prove that claim through information obtained during discovery." *Id.*; *see also Chestnut v. Kincaid*, Civ. No. RDB-20-2342, 2021 WL 1662469, at *8 (D. Md. Apr. 28, 2021) (finding that where plaintiff made specific allegations regarding the actions of the three individually named defendants where he had specific knowledge and alleged that each defendant was "intimately involved in the investigation," the use of group pleading was sufficient to meet the *Twombly/Iqbal* standards).

Here, the complaint alleges that Vigue "was the lead investigator of this attempted murder case," and that Copeland and Danielczyk were members of the investigative team. ECF 1, at 11 ¶ 64. The complaint also alleges that Vigue, Copeland, and Danielczyk were "involved in th[e] investigation," *id.* at 8 ¶ 40, the three detectives "worked collaboratively during the investigation and shared information with one another as it was gathered," *id.* at 11 ¶ 65, and the Officer Defendants "intimidated [] Brockington, supplied him with the police's version of the facts and used suggestive tactics during the photo arrays." *Id.* at 12 ¶ 70. It is true that all of the allegations in the complaint refer to "Officer Defendants" or "BPD employees," rather than naming each of the three Defendants. However, the complaint makes clear that the use of this collective noun was a "calculated decision" to accuse all named parties. *See* ECF 1, at 8 ¶ 40 ("BPD employees involved in this investigation included, but are not limited to, Detective George Vigue, Detective

Scott Danielczyk, and Detective Ronald Copeland (referred to as BPD Employees and/or Officer Defendants)."); *see also Burgess I*, 2016 WL 795975, at *10. Moreover, Plaintiff alleges that all three defendants participated in a scheme involving the same conduct, namely that they coerced and fabricated a false statement and identification from Brockington in order to secure a conviction against Plaintiff. ECF 1, at 13 ¶ 71–74. In support of this claim, Plaintiff alleges, *inter alia*, that the Officer Defendants "became aggressive with [] Brockington, banging their finger on the table, while pointing at the picture of [] Thomas and insisting [] Brockington pick a photograph falsely identifying [] Thomas as being his shooter," *id.* at 10 ¶ 56, "told [] Brockington they finished their investigation, they knew [] Thomas was the man that shot him, and that they just needed [] Brockington to sign his name next to the photograph," *id.* at 11 ¶ 61 and decided not to take a recorded statement from Wilson after she "told the Officer Defendants that the person who shot [] Brockington was not in the photospread that had [] Thomas's picture." *Id.* ¶ 63. As in *Sprint*, the Court finds that Plaintiff "need not adhere to a strict or repetitive construction to avoid dismissal where, on the face of the complaint, the facts alleged plausibly support the legal claims against each defendant." *Sprint*, 2013 WL 3776933, at *2. Because Plaintiff has plausibly alleged that each detective was part of the investigation team and personally involved in obtaining the allegedly coerced and fabricated identification, the use of group pleading at this early stage of litigation is sufficient to meet the requirements under *Twombly* and *Iqbal*.[5]

---

[5] The Court is similarly unpersuaded by Defendants' argument that Plaintiff "fails to establish each Defendant Officer's personal liability as statutorily required by § 1983." ECF 20-1, at 4. For the same reasons articulated in the group pleading analysis, the Court agrees with Plaintiff that the complaint plausibly alleges that the Officer Defendants "used aggressive and suggestive tactics on [] Brockington, fed [] Brockington false information, convinced him to sign the false identification, and fabricated the false statement and identification." ECF 29, at 13 (citing ECF 1, at 12–15 ¶¶ 69–85). Using the term "Officer Defendants" instead of naming each of the three detectives does not negate an otherwise sufficient showing of personal liability under § 1983. Accepting Plaintiff's allegations as true, Plaintiff has shown that an official, acting under color of state law, caused the

### B.   Malicious Prosecution

In Count I of the complaint, Plaintiff alleges that all three Officer Defendants are liable under Section 1983 for malicious prosecution in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. ECF 1, at 17. In Count V, Plaintiff alleges that the Officer Defendants are also liable under Maryland state law for malicious prosecution. *Id.* at 20. To plausibly plead a malicious prosecution claim under federal law, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Cahaly v. Larosa*, 796 F.3d 399, 407 (4th Cir. 1998) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Probable cause is "an objective standard of probability that reasonable and prudent persons apply in everyday life," *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998), and is determined by a "totality-of-the-circumstances" approach, *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." *Gray*, 137 F.3d at 769 (internal quotation marks omitted).

Similar to claims under federal law, a malicious prosecution claim under Maryland law requires "that the defendant instituted or continued a criminal proceeding; the proceeding was resolved in favor of the accused; there was no probable cause for the proceeding; and the defendant acted with malice, or for the primary purpose other than that of bringing an offender to justice."

---

deprivation of a federal right, which is enough to establish personal liability under § 1983. *See Hafer v. Melo*, 502 U.S. 21, 22 (1991).

*Burley v. Balt. Police Dep't.*, 422 F. Supp. 3d 986, 1035 (D. Md. 2019). (citing *Okwa v. Harper*, 757 A.2d 118, 130 (Md. 2000)).

The Officer Defendants contend that there was probable cause for the arrest of Plaintiff because Brockington identified Plaintiff as the person who shot him and the Defendants "reasonably relied upon the victim's identification of his shooter to support probable cause to arrest Plaintiff." ECF 20-1, at 9. Plaintiff responds that "[t]he Officer Defendants intentionally coerced [] Brockington in order to obtain the fabricated identification, thus, they themselves were aware that they did not possess probable cause for Plaintiff's arrest," and "[t]he principle that the Officer Defendants cannot fabricate evidence through coercion and subsequently rely on it for arrest is widely acknowledged." ECF 29, at 18.

Central to Plaintiff's complaint are allegations that the Officer Defendants coerced and intimidated Brockington to adopt the officers' own false narrative of the crime. ECF 1, at 12–13 ¶¶ 67, 69, 70, 71. Plaintiff alleges, and the Court accepts as true, that Brockington did not initially select Thomas's photograph, *id.* at 10 ¶ 55, then in the presentation of subsequent photospreads, Officer Defendants "became aggressive with [] Brockington . . . point[ed] at the picture of [] Thomas and insist[ed] [] Brockington pick a photograph falsely identifying [] Thomas as [the] shooter" *id.* ¶ 56, and Officer Defendants "show[ed] up at [Brockington's] house, or [picked] [] Brockington up and [took] him to the police station," where they "insisted that [] Brockington needed [] to pick [] Thomas's photograph." *Id.* at 11 ¶ 60. Moreover, Plaintiff alleges that when Wilson "refused to make any identification from the photospread and told BPD Employees why [] Thomas's picture was not the person who shot [] Brockington," they decided not to take a recorded statement from Wilson. *Id.* ¶¶ 62, 63. Accepting these allegations as true, it is plausible that Defendants caused Plaintiff's seizure and it was unsupported by probable cause. *See*

*McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 283 (D. Md. 2020) ("[T]aking as true Plaintiffs' assertions that [the defendants] knew that the arrests were unsupported by probable cause because each of [the] identifications were false, Plaintiffs plausibly pled a malicious prosecution claim."); *Chestnut*, 2021 WL 1662469, at *9 ("If the Officer Defendants truly coerced the four witnesses into identifying the Plaintiffs and falsely stating they were involved in the crime, it is hard to see how such statements could have provided the Officer Defendants with probable cause to make the arrests.").

Moreover, the knowing falsification of evidence, resulting in an absence of probable cause, can constitute malice. *See DiPino v. Davis*, 729 A.2d 354, 374 (Md. 1999) (inferring malice from lack of probable cause); *Butler v. Windsor*, Civ. No. PWG-13-883, 2014 WL 2584468, at *11 (D. Md. June 9, 2014) ("[B]ecause the jury could find a lack of probable cause, it could also infer malice."). Contrary to Officer Defendants' assertions, there is nothing conclusory about Plaintiff's claims of malice and a related lack of probable cause. *See, e.g.,* ECF 1 ¶¶ 56–61, 66, 70–72. Thus, Plaintiff's state and federal malicious prosecution claims against the Officer Defendants survive.

### C.    Fabrication of Evidence

In Count II, Plaintiff alleges—again under Section 1983—a violation of due process under the Fourteenth Amendment to the Constitution for the Officer Defendants' alleged fabrication of evidence. ECF 1, at 18. To state a claim under Section 1983 based on fabrication of evidence, a plaintiff must allege that the defendant fabricated evidence and that the fabrication resulted in a deprivation of the plaintiff's liberty. *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005) (citing *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)). In this case, Plaintiff specifically alleges that the Officer Defendants coerced and threatened Brockington into falsely identifying Plaintiff and making statements implicating Plaintiff in the attempted murder. ECF 1, at 10–11 ¶

55–62 (alleging, *inter alia*, that the Officer Defendants told Brockington that they finished their investigation, knew Thomas was the man that shot him, and "they just needed [] Brockington to sign his name next to the photograph" despite Brockington's repeated failure to pick Thomas out of prior photospreads).

The Fourth Circuit has recognized a due process claim for fabrication of evidence on the basis of coercing a witness into providing false testimony. *See Gilliam v. Sealey*, 932 F.3d 216, 240 (4th Cir. 2019). In support of his allegations, Plaintiff alleges that the Officer Defendants became aggressive with Brockington and insisted that he pick the photograph of Thomas as the shooter, ECF 1, at 10 ¶ 56, but Brockington nonetheless "refused to pick the pictures of [] Thomas that BPD employees identified and pointed at, or any photograph on more than one occasion." *Id.* ¶ 57. The Officer Defendants also allegedly repeatedly failed to report that Brockington had not identified Thomas as the shooter, *id.* ¶ 58, and the Officer Defendants repeatedly showed Brockington photospreads after showing up at his house or bringing him down to the police station such that Brockington was "in fear that the police were going to continue to harass him or his family and violate his rights." *Id.* at 11 ¶ 61. Taking those facts as true and in the light most favorable to Plaintiff, there is a plausible basis to infer that the Officer Defendants knew that Brockington's inculpatory statement was false. *See McPherson*, 494 F. Supp. 3d at 282 (finding fabrication of evidence claim survives dismissal where Plaintiff alleged witness told officers that plaintiffs had no involvement in the murder, but the officers said "[the witness] was wrong and insisted he give a different answer, after feeding him information [the officers] wanted him to say").

While Officer Defendants argue that "there are no plausible allegations in the complaint to explain how [Officer Defendants] then fabricated Brockington's trial testimony, which affirmed

his identification of Plaintiff," ECF 20-1, at 12, the Court finds that Plaintiff has plausibly alleged that the same underlying conduct caused both the initial false identification and the trial testimony. *See* ECF 1, at 13 ¶ 71 ("Under intense pressure from the interrogating Defendants, [] Brockington falsely signed [] Thomas's photograph and otherwise stated that [] Thomas shot him because of the unconstitutional coercion committed by the Officer Defendants during their meetings with [] Brockington and all the way through his testimony at trial."); *see also id.* at 4 ¶ 12 ("The Officer Defendants made certain [] Brockington showed up for [] Thomas's trial and that he testified consistently with the fabricated identification.").[6] As such, the Court is satisfied that Plaintiff, at this early stage, has stated a plausible claim for relief based on fabrication of evidence.

    **D.**    **Failure to Investigate and Disclose Exculpatory and Impeachment Evidence**

    In Count III of the complaint, Plaintiff alleges another violation of due process under the Fourteenth Amendment through Section 1983, asserting that the Officer Defendants deprived him of his liberty by failing to adequately investigate and disclose exculpatory and impeachment evidence. ECF 1, at 19. This claim is based on alleged violations of the principles established in *Brady v. Maryland*, 373 U.S. 83 (1963). To state a claim that a police officer violated *Brady*, a plaintiff must allege "(1) the evidence at issue was favorable to him; (2) the Officers suppressed the evidence in bad faith; and (3) prejudice ensued." *Owens*, 767 F.3d at 396–97. When police officers fail to disclose exculpatory evidence, the court can infer bad faith. *Johnson v. Balt. Police Dep't.*, Civil No. ELH-19-00698, 2020 WL 1169739, at *24 (D. Md. Mar. 10, 2020) ("A plaintiff

---

[6] The factual issues related to whether Brockington recanted his identification need not be considered at this early stage of the litigation given that the complaint plausibly alleges that the Officer Defendants fabricated evidence and that fabrication resulted in the deprivation of Plaintiff's liberty. *See* ECF 1, at 4–5 ¶¶ 9–14. The Court notes that it is undisputed that a judge granted Thomas's writ of actual innocence and the State's Attorney's Office issued a certification confirming that Thomas is "factually innocent of all the charges upon which he was convicted." *Id.* at 5 ¶¶ 17, 18.

need not demonstrate bad faith directly; it can be inferred through gross deviations from routine police conduct.").

"Evidence of contradictory and coerced statements is the kind of evidence that courts have found to be favorable to a witness under the *Brady* standard." *Chestnut*, 2021 WL 1662469, at *11. Here, Plaintiff alleges that the Officer Defendants failed to "report to the SAO that [] Brockington repeatedly failed to identify [] Thomas as the shooter," ECF 1, at 10 ¶ 58, "selectively summarized their progress in investigative notes and reports," *id.* at 11–12 ¶ 65, "failed to memorialize meetings with [] Brockington when [] Brockington was presented with photospreads containing [] Thomas's photograph and [] Brockington did not select [] Thomas's photograph," *id.* at 12 ¶ 66, and failed to "disclose these events to the prosecution or the defense because they contradicted the Officer Defendants' narrative of the case."[7] *Id.* These allegations are sufficient to show that the evidence at issue was favorable to Plaintiff because these facts plausibly support his innocence and cast doubt on the prosecution's case. Additionally, "bad faith can be inferred when police officers fabricate evidence and fail to disclose especially pertinent exculpatory evidence." *Johnson*, 2020 WL 1169739, at *24; *see also Burgess v. Balt. Police Dep't ("Burgess II")*, Civ. No. RDB-15-0834, 2017 WL 4947004, at *13 (D. Md. Oct. 31, 2017) ("Regarding bad faith, the patently exculpatory nature of this information would negate any negligent or innocent explanation for the Defendant's failure to disclose."). According to Plaintiff, the Officer Defendants "did not take notes of, or videotape or audio record, other prior meetings with [] Brockington when he refused to follow their direction to select [] Thomas's photograph," as well

---

[7] Plaintiff also alleges that after Wilson did not identify the shooter from the Officer Defendants' photo array, the Officer Defendants told Wilson "that she needed to pick a picture anyway." *Id.* at 9–10 ¶¶ 51, 52. Wilson told the Officer Defendants "why she knew the picture of [] Thomas was not the person she saw, and she explained why his picture was wrong," *id.* at 10 ¶ 54, and then the Officer Defendants "decided not to take a recorded statement from [] Wilson." *Id.* at 11 ¶ 63.

17

as "failed to disclose, among other things, their intimidation, suggestive photo array tactics, and pre-statement and pre-identification statements to [] Brockington trying to convince him of [] Thomas's guilt," thus alleging a plausible basis to infer bad faith.[8] ECF 1, at 13 ¶¶ 72, 74. Finally, Plaintiff has plausibly alleged prejudice given that "[t]he prosecution case at trial relied on the coerced and/or fabricated identification and witness testimony of [] Brockington," and the exculpatory evidence could have been used to support Plaintiff's innocence. *Id.* at 14 ¶ 81. These allegations are more than sufficient to plausibly infer bad faith suppression of evidence in violation of *Brady v. Maryland*, and thus the claim survives dismissal.[9]

###    E.    Failure to Intervene

Count IV of the complaint alleges failure to intervene against all three Officer Defendants, again under Section 1983. ECF 1, at 20. This cause of action has been recognized by the Fourth Circuit, and it is "'premised on a law officer's duty to uphold the law and protect the public from

---

[8] The Court also finds that Defendants mischaracterize Plaintiff's theory regarding failure to investigate. *See* ECF 20-1, at 15 ("There is no cognizable claim for relief based upon a 'failure to adequately investigate,' as Plaintiff pleads."). The complaint makes clear, and Plaintiff reiterates, that he is not alleging an independent failure to investigate claim. *See* ECF 29, at 26. Rather, Plaintiff alleges that "the Officer Defendants' failure to conduct a full and adequate investigation was the result of their bad-faith suppression of evidence." *Id.* As the Fourth Circuit has explained, Plaintiff could "establish a due process violation if the jury concluded that [defendants'] actions after [Plaintiffs'] arrests—including failing to adequately investigate [an alternate suspect] and the crime scene and failing to disclose exculpatory evidence—were done in bad faith in order to shield [defendants'] wrongful acts related to [Plaintiffs'] coerced or fabricated confessions." *Gilliam*, 932 F.3d at 240–41. Plaintiff has plausibly alleged, as part of his *Brady*-based due process claim, that Defendants' failure to investigate was a result of their bad-faith suppression of evidence. Thus, Defendants' arguments regarding a stand-alone failure to investigate claim are unavailing.

[9] Officer Defendants raise several arguments regarding whether the allegedly undisclosed evidence was material, ECF 29, at 14 and whether defense counsel should have uncovered the evidence in the exercise of reasonable diligence. *Id.* at 14–15. As Judge Gallagher noted in *McPherson*, where defendants raised similar arguments, these are "factual disputes not suited for resolution at the motion to dismiss stage." 494 F. Supp. 3d at 282. At this stage, Plaintiff must plausibly allege that his constitutional rights were violated by Officer Defendants' withholding or suppression of evidence. For the reasons already discussed, Plaintiff has met this burden.

illegal acts, regardless of who commits them.'" *See Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416–17 (4th Cir. 2014) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). As the Fourth Circuit explained in *Randall*, "such a duty attaches when an officer observes or has reason to know that 'a constitutional violation [is being] committed' by other officers and possesses 'a realistic opportunity to intervene to prevent the harm from occurring.'" 302 F.3d at 203–04 (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Failure to intervene claims are "by nature, concomitant with a plaintiff's other [Section] 1983 claims." *Johnson*, 2020 WL 1169739, at *15 (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996)). To state a claim for failure to intervene, a plaintiff must assert that an officer was (1) "confronted with a fellow officer's illegal act," (2) "possesse[d] the power to prevent it," and (3) "cho[se] not to act." *Burley*, 422 F. Supp. 3d at 1030 (quoting *Brooks v. Johnson*, 924 F.3d 104, 110 (4th Cir. 2019) (internal citation omitted)).

The Officer Defendants argue that Plaintiff fails to state a failure to intervene claim because Plaintiff engaged in improper group pleading which fails to establish personal liability. ECF 20-1, at 17. However, as previously established, the Court rejected these arguments and held that Plaintiff adequately stated a claim for relief for malicious prosecution, fabrication of evidence, and failure to investigate and disclose exculpatory and impeachment evidence.[10]

---

[10] As previously established, Plaintiff sufficiently alleged that all three Officer Defendants were members of the investigative team and shared information with one another as it was gathered. ECF 1, at 11–12 ¶¶ 64, 65. The complaint also alleges that during the Officer Defendants' meetings with Brockington, the Officer Defendants "physically pointed to the picture of [Plaintiff]," "directed [] Brockington to [Plaintiff's] photograph," "became aggressive with [] Brockington," "told [] Brockington that [Plaintiff] was the person that shot [him] and insisted that [] Brockington needed to sign his name and identify the picture of [Plaintiff] as being his shooter." *Id.* at 3–4 ¶ 8. Thus, Plaintiff has plausibly alleged that the Officer Defendants personally deprived Plaintiff of his constitutional rights.

19

However, the Court agrees with Defendants that the complaint does not "specify which [Officer Defendants] committed the misconduct [Plaintiff] alleges, which Defendant Officers stood by while witnessing such misconduct, and when such officers had a reasonable opportunity to intervene in the alleged misconduct." ECF 33, at 13. "A defendant . . . cannot be held liable for both participating in the injury and failing to prevent the injury." *Estate of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 163 (D. Md. 2018) (citations omitted); *see also Jones v. Chapman*, Civ. No. ELH-14-2627, 2017 WL 2472220, at *35 (D. Md. June 7, 2017) ("As a preliminary matter, if the officers 'participate[d] in the fray' . . . as plaintiffs claim, then they were not acting as bystanders."). Unlike in *McPherson*, where one of the two defendant officers was not alleged to have been personally engaged in violating the Plaintiff's rights, and therefore "would have had the opportunity to intervene to prevent the other officer's unconstitutional acts," 2020 WL 6063479, at *8, here, every allegation, by reference to Officer Defendants, implies that all three defendants personally participated in the misconduct. *See generally* ECF 1. There are no facts from which the Court can infer that one defendant stood by and watched while another defendant committed misconduct. On the contrary, the complaint alleges that all three defendants (the "Officer Defendants") participated in each alleged instance of misconduct. Because Officer Defendants cannot both participate in causing injury and fail to prevent the injury, and Plaintiff has alleged that all three Officer Defendants participated in each part of the alleged misconduct, the failure to intervene claim must be dismissed.[11] *See Weeden v. Prince George's Cnty*, Civ. No. GJH-17-2013, 2018 WL 2694441, at *5 (D. Md. June 4, 2018).

---

[11] Discovery may provide more specific evidence regarding which defendants participated in the alleged misconduct versus which defendants (if any) failed to prevent it. To the extent the discovery process provides evidence to support a failure to intervene claim, Plaintiff is free to seek leave to amend the complaint. However, the failure to intervene count, as currently pled, must be dismissed.

### F.    Intentional Infliction of Emotional Distress

In Count VI[12] of the complaint, Plaintiff alleges that all three Officer Defendants are liable for intentional infliction of emotional distress ("IIED") under Maryland law. ECF 1, at 21. To plead IIED under Maryland law, "a plaintiff must allege: (1) that the conduct in question was intentional or reckless; (2) that the conduct was extreme and outrageous; (3) that there was a causal connection between the conduct and the emotional distress; and (4) that the emotional distress was severe." *McPherson*, 2020 WL 6063479, at *10 (citing *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). As the court noted in *Arsham v. Mayor & City Council of Balt.*, "[t]he tort of IIED 'is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct . . . of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" 85 F. Supp. 3d 841, 849 (D. Md. 2015) (quoting *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8 (Md. 1992)). However, the Court finds that the Plaintiff in this case may "plausibly meet that very rigorous standard." *McPherson*, 2020 WL 6063479, at *11. Plaintiff plausibly alleges that the conduct in question was intentional, *see* ECF 1, at 13, 17 ¶¶ 73, 105, (2) that the conduct was extreme and outrageous, *id.* at 11–13 ¶ 60–72, (3) that there was a causal connection between the conduct and the emotional distress, *id.* at 16–17 ¶ 99–104, and (4) that the emotional distress was severe. *Id.* Moreover, as Judge Gallagher explained in *McPherson*, the Defendants' positions as law enforcement officers "enhance[d] the alleged extreme and outrageous character of their conduct, which 'may arise from [their] abuse of a position, or relating with another person, which gives him actual or apparent authority over him, or power to affect his interests.'" 494 F. Supp. 3d at 286 (quoting *Harris v. Jones*, 380 A.2d 611, 615–16 (Md. 1977)). As in *McPherson*, the Officer Defendants are "alleged to have used their authority as officers to

---

[12] Count V (claim for malicious prosecution under state law) was addressed in Section B, along with Plaintiff's claim for malicious prosecution under § 1983.

falsify evidence of [Plaintiff's] participation in a[n] [attempted] homicide, resulting in decades of wrongful imprisonment and the attendant emotional distress." *Id.; see also Chestnut*, 2021 WL 1662469, at *13 (same).    Accordingly, the Court declines to dismiss Plaintiff's intentional infliction of emotional distress claim.

II.    Claims Against the Baltimore Police Department

The final count of Plaintiff's complaint, Count VII, asserts a claim for indemnification against the BPD and states that the BPD should be ordered to indemnify the Officer Defendants for any judgment entered against them in this matter. ECF 1, at 22. The BPD argues that Plaintiff's indemnification claim must be dismissed as premature because liability has not yet been established. ECF 21-1, at 3. Plaintiff maintains that "resolution of the indemnification claim will inherently be resolved through the litigation of the underlying claim, such that permitting the claim to proceed will be beneficial in terms of expedience and economy." ECF 28, at 7.

The Local Government Tort Claims Act ("LGTCA") provides that a "local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1). The Act specifically notes that the BPD is such a "local government." *Id.* § 5-301(d)(21). This Act also specifically provides that a local government cannot assert sovereign immunity as a defense against claims for indemnification. *Id.* § 5-303(b)(2).

Plaintiff may pursue his indemnification claim against BPD if (1) he successfully proves that the Officer Defendants committed the underlying torts alleged in this matter and he obtains a judgment, and (2) this Court finds that the officers acted within the scope of their employment. *Grim v. Balt. Police Dep't.*, Civ. No. ELH-18-3864, 2019 WL 5865561, at * 27 (D. Md. Nov. 8.

2019); *see also Johnson*, 2020 WL 1169739, at *38 ("[A] judgment against a local government employee is a precondition to recovering against a local government under the LGTCA.").

Because the only claim Plaintiff asserts against BPD is an indemnification claim, the Court finds that the claim is not yet ripe for judicial review. *See Grim*, 2019 WL 5865561, at *28 (finding indemnification claim premature where plaintiff had not yet obtained a judgment against the individual defendants); *see also Simmons v. Balt. City Police Dep't*, No. 21-cv-969-LKG, 2023 WL 8452448, at *22 (D. Md. Dec. 6, 2023) (explaining indemnification claim was not ripe for review because there was no finding of liability as to the officers).[13] The cases cited by Plaintiff in support of his indemnification argument each contained, in addition to a claim for indemnification, claims directly against BPD (*i.e.*, *Monell* claims[14]) that survived dismissal, thereby vesting the Court with jurisdiction over BPD. *See Chestnut*, 2021 WL 1662469, at *16 (asserting a *Monell* claim against BPD); *McPherson*, 494 F. Supp. 3d at 288 ("Plaintiffs have lodged a *Monell* claim directly against the BPD."); *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 532 (D. Md. 2020) (asserting *Monell* claim against BPD); *Johnson*, 2020 WL 1169739, at *29 (same). In short, in those cases, the question of threshold liability was at issue for *both* the

---

[13] The Court notes that in *Simmons*, the court dismissed the Section 1983 and state law claims asserted against the Officer Defendants and thus concluded that the indemnification claim must be dismissed. *Simmons*, 2023 WL 8452448, at *22. Here, the Court has determined that all claims, except the failure to intervene claim, will survive the Defendants' motion to dismiss. Nonetheless, the Court agrees with the underlying rationale in *Simmons* that a claim against the BPD solely for indemnification is unripe if liability has not been established.

[14] A municipality is subject to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The Supreme Court determined in *Monell* that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only where those defendants were executing an official policy or custom of the local government resulting in a violation of the plaintiff's rights. *Id.* at 690–91.

individual Officer Defendants and the BPD. Thus, to avoid the possibility of redundant litigation, dismissal of BPD's indemnification claim was deemed improper.[15]

Here, however, Plaintiff's only claim against BPD is for indemnification; Plaintiff does not assert any *Monell* claims against BPD. ECF 1, at 22. Because indemnification is contingent upon a finding of liability and Plaintiff does not assert any claims alleging that BPD is directly liable for the harm caused, the indemnification claim is not ripe for review. *See Standage*, 526 F. Supp. 3d at 93 ("[A] claim is not ripe for judicial review if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citation and quotation marks omitted); *see also Burgess I*, 2016 WL 795975, at *11 n.13 ("[Plaintiff's] claim for indemnification under state law [] is not ripe, as no judgment against the Officer Defendants [] has yet to be entered . . . If a judgment is ultimately entered against the Officer Defendants [] for acts within the scope of their employment, then BPD will pay the judgment unless an exception applies."). Accordingly, the Court elects to dismiss the indemnification claim without prejudice.[16]

---

[15] Bifurcating and staying an indemnification claim against the BPD can serve judicial economy and is permissible because Federal Rule of Civil Procedure 13(g) permits crossclaims of indemnification early on in litigation. *Johnson*, 2020 WL 1169739, at *38. However, as discussed above, generally the bifurcation route is appropriate only where there is a separate, direct, and viable cause of action against the BPD. *See McPherson*, 494 F. Supp. 3d at 288. At this time, there is no such claim pending.

[16] BPD also asserts that "[t]o the extent that Thomas's Complaint seeks to assert a claim of punitive damages against BPD, that claim fails as a matter of law." ECF 21-1, at 6. In his response, Plaintiff clarifies that "there is not a separate claim for punitive damages against the BPD" and "the BPD is sued in Count VII for indemnification which relates to compensatory damages." ECF 28, at 8. There appears to be no genuine dispute over the non-availability of punitive damages, but out of an abundance of caution, the Court notes that punitive damages are not available against BPD for either Plaintiff's § 1983 claims or the Maryland state law claims. *See St. Michael's Media, Inc. v. Mayor & City Council of Balt.*, Civ. No. ELH-21-2337, 2023 WL 2743361, at *42 (D. Md. Mar. 31, 2023) ("[A] municipality is immune from liability for punitive damages under 42 U.S.C. § 1983.") (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981)); *see also* Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1) §§ 5-301, 5-303 ("A local government may not be liable for punitive damages.").

24

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Officer Defendants' motion to dismiss, ECF 20, is granted in part and denied in part. The Court finds that all claims against the Officer Defendants, except the failure to intervene claim, survive dismissal. The Baltimore Police Department's motion to dismiss, ECF 21, is granted.

A separate implementing Order will issue.

Dated: <u>January 10, 2025</u>

<u>_____/s/_____</u>
Brendan A. Hurson
United States District Judge
